Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone: 516.741.4977
Facsimile: 516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY KELLEY,<br><br>Plaintiff,<br><br>vs.<br><br>ZIX CORPORATION, DAVID J. WAGNER, MARK J. BONNEY, MARCY CAMPBELL, TAHER A. ELGAMAL, JAMES H. GREENE, JR., ROBERT C. HAUSMANN, MARIBESS L. MILLER, and BRANDON B. VAN BUREN,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Timothy Kelley ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Zix Corporation ("Zix" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14 (d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Open Text Corporation. ("Parent" or "OpenText") as a result of an

unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction representing a total approximate value of $860 million (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a November 8, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, OpenText will acquire all the outstanding shares of Zix common stock for $8.50 per share in cash. As a result, Zix will become an indirect wholly-owned subsidiary of OpenText.

3. Thereafter, on November 23, 2021, Zix filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process in which the Board failed to create a committee of independent and disinterested directors to run the sales process.

5. Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act Defendants caused to be filed the materially deficient Recommendation Statement on November 23, 2021, with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Zix shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of

the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Zix, provided by Zix to the Company's financial advisor Citigroup Global Markets Inc. ("Citi"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Citi and provided to the Company and the Board.

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9. Plaintiff is a citizen of Wyoming and, at all times relevant hereto, has been a Zix stockholder.

10. Defendant Zix is a leader in email security, productivity, and compliance. Zix is incorporated in Texas and has its principal place of business at 2711 N. Haskell Avenue, Suite 2300, LB 36, Dallas, TX 75204. Shares of Zix common stock are traded on the Nasdaq Stock Exchange under the symbol "ZIXI".

11. Defendant David J. Wagner ("Wagner") has been a Director of the Company at all relevant times. In addition, Wagner serves as the Company's Chief Executive Officer ("CEO") and President.

12. Defendant Mark J. Bonney ("Bonney") has been a director of the Company at all relevant times.

13. Defendant Marcy Campbell ("Campbell") has been a director of the Company at all relevant times.

14. Defendant Taher A. Elgamal ("Elgamal") has been a director of the Company at all relevant times.

15. Defendant James H. Greene, Jr. ("Greene, Jr.") has been a director of the Company at all relevant times.

16. Defendant Robert C. Hausmann ("Hausmann") has been a director of the Company at all relevant times. In addition, Hausmann serves as the Company's Chairman of the Board.

17. Defendant Maribess L. Miller ("Miller") has been a director of the Company at all relevant times.

18. Defendant Brandon B. Van Buren ("Van Buren") has been a director of the Company at all relevant times.

19. Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

20. Non-Party OpenText is a Canadian company that develops and sells enterprise information management software. Shares of OpenText common stock are traded on the Nasdaq Stock Exchange under the symbol "OTEX."

21. Non-Party Merger Sub is a wholly owned subsidiary of OpenText created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14 (d), and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

25. Zix provides solutions for email encryption, data loss prevention, threat protection, unified archiving, and cloud data backup in the United States, Israel, Canada, the United Kingdom, and Switzerland. The Company offers Advanced Email Threat Protection, a cloud-based service that defends organizations from zero-day malware, ransomware, phishing, CEO fraud, W-2 phishing attacks, spams, and viruses in email; and Information Archive, a cloud-based email retention solution that enables user retrieval, compliance, and e-discovery. It also provides Email Encryption Service that allows a user to send encrypted email to any email user anywhere and on any Internet-enabled device; cloud-based cybersecurity solutions for small and medium businesses; information rights management, e-signatures, and secure file sharing solutions; and software-as-a-service cloud backup and recovery solutions. The Company serves the healthcare, financial services, and insurance industries, as well as government sectors. Zix Corporation sells its services through a direct sales force and tele sales force; and a network of resellers and other distribution partners, including other managed service providers. The Company was formerly known as ZixIt Corporation and changed its name to Zix Corporation in 2002. Zix was incorporated in 1988 and is headquartered in Dallas, Texas.

26. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success. For example, in the August 5, 2021 press release announcing its 2021 Q2 financial results, the Company reported milestones such as Revenue

increased 18% to $62.8 million and Annual recurring revenue (ARR) increased 17% to $252.4 million. Cloud ARR increased 24% to $225.6 million or 89% of total ARR.

27. Speaking on the results, CEO Defendant Wagner said, "'We demonstrated strong growth in the second quarter which sets the stage for a solid second half. Financially, we delivered 18% total revenue growth, 17% ARR growth and 7% adjusted gross profit dollar growth, while generating $14.7 million in cash flow from operations. Operationally, we continue to accelerate the adoption of our Secure Cloud platform which is further improving partner/customer experiences and allowing us to layer on more services. CloudAlly is continuing to perform exceedingly well, reflecting cloud backup's increasingly critical role within a secure modern workplace. We launched Secure Cloud into the German market this quarter, demonstrating both our commitment to the channel and execution on our international expansion plan. Looking ahead, Zix remains well positioned to capitalize on secular market trends of cloud adoption and ensuring that hybrid work environments are productive, secure, compliant and resilient.'"

28. The promise and financial results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Zix. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

29. Despite this upward trajectory, the Individual Defendants have caused Zix to enter into the Proposed Transaction without providing requisite information to Zix stockholders such as Plaintiff.

***The Flawed Sales Process***

30. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

31. Notably, the Recommendation Statement indicates that no committee of independent, disinterested directors was created to run the sales process.

32. The Recommendation Statement also fails to contain adequate information as to why no "majority of the minority" vote provision was included given the fact that funds affiliated with True Wind Capital ("True Wind") own at least approximately 32% of the outstanding stock of the Company, and that all such shares have been committed to tendering in favor of the Proposed Transaction via a Tender and Voting Agreement.

33. In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including OpenText, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including OpenText, throughout the sales process, if any, would fall away.

34. It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

35. On November 8, 2021, Zix issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **DALLAS, Texas – Nov. 8, 2021** – Zix Corporation (NASDAQ: ZIXI) ("Zix"), a leading provider of cloud email security, threat protection and compliance cloud solutions for Small and Medium-sized Businesses (SMBs), today announced that it has entered into a definitive agreement to be acquired by OpenText™, a market-leading provider of Information Management solutions, for $8.50 per share in cash, representing an enterprise value of $860 million.
>
> "We are pleased to announce this transaction with OpenText," said Robert Hausmann, Chairman of Zix. "Following a strategic review conducted by our Board of the Directors (the "Board"), triggered in part by unsolicited approaches from multiple parties, Zix and its financial advisor conducted a broad outreach to more than 70 strategic and financial parties over a number of months. Today's announcement is the culmination of that process. This transaction, which has been

unanimously approved by the Zix Board, delivers to Zix's stockholders liquidity, value certainty and a high likelihood and speed to closing with a proven acquiror."

Dave Wagner, Zix's Chief Executive Officer, added, "Over the past several years, Zix has expanded its product portfolio and customer base through acquisitions and organic initiatives. We are thrilled to join forces with OpenText and add Zix's Secure Cloud Platform to the Carbonite and Webroot products in OpenText's SMB Platform. OpenText provides the ideal opportunity to help Zix achieve its next phase of growth. This transaction will bring greater resources and product capabilities, and provide significant benefits to our customers, partners and employees."

Under the terms of the agreement, an OpenText subsidiary will commence a tender offer for all outstanding shares of Zix common stock at a price of $8.50 per share in cash, representing a premium of 16% to the volume-weighted average closing price of Zix common stock for the 20 trading days prior to October 18, 2021, when news reports appeared regarding a potential transaction.

Closing is subject to the tender of two-thirds of Zix's common shares outstanding as well as customary regulatory approvals and other customary conditions, and the transaction is expected to close within 90 days of this announcement. Zix's largest shareholder, an affiliate of True Wind Capital, L.P., has agreed, subject to satisfaction of certain conditions, to convert its Series A Preferred Shares into common shares and to tender those shares in the tender offer. Zix's executive officers and certain directors have likewise agreed to tender their common shares in the tender offer.

***Potential Conflicts of Interest***

36. The breakdown of the benefits of the deal indicates that Zix insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Zix.

37. Notably, Company insiders (including True Wind, which owns its ~32% of Company Stock through Director Greene), currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name | Number of Shares Beneficially Owned (#) | Cash Consideration Payable in Respect of Shares ($) |
|---|---|---|
| David J. Wagner | 537,278 | 4,566,863 |
| David E. Rockvam | 238,840 | 2,030,140 |
| Ryan L. Allphin | 25,000 | 212,500 |
| John P. Di Leo | 88,898 | 755,633 |
| Noah F. Webster | 91,948 | 781,558 |
| Robert C. Hausmann | 108,048 | 918,408 |
| Mark J. Bonney | 61,696 | 524,416 |
| Maryclaire Campbell | 39,099 | 332,342 |
| Taher A. Elgamal | 50,098 | 425,833 |
| James H. Greene, Jr.(1) | 20,699,837(2)(3) | 175,948,615 |
| Maribess L. Miller | 104,014 | 884,119 |
| Brandon Van Buren(4) | — | — |
| All of Zix's current directors and executive officers as a group (12 persons) | 22,044,756 | 187,380,426 |

38. Moreover, upon the consummation of the Proposed Transaction, the Recommendation Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name of Executive Officer or Director | Number of Shares subject Company Options (#) | Cash Consideration for Company Options ($) |
|---|---|---|
| David J. Wagner | 200,000 | 978,000 |
| Ryan L. Allphin | 100,000 | 180,000 |
| John P. Di Leo | 100,000 | 47,000 |
| David E. Rockvam | 100,000 | 456,000 |
| Noah F. Webster | — | — |
| Mark J. Bonney | 78,894 | 382,785 |
| Maryclaire Campbell | — | — |
| Taher A. Elgamal | 27,708 | 118,887 |
| Robert C. Hausmann | — | — |
| Maribess L. Miller | 15,408 | 75,345 |

| Name of Executive Officer or Director | Number of Shares subject to PSUs/Performance Shares (#) | Cash Consideration for PSUs/Performance Shares ($) |
|---|---|---|
| David J. Wagner | 553,428 | 4,704,138 |
| Ryan L. Allphin | 158,713 | 1,349,061 |
| John P. Di Leo | 231,542 | 1,968,107 |
| David E. Rockvam | 334,506 | 2,843,301 |
| Noah F. Webster | 148,392 | 1,261,332 |
| Mark J. Bonney | — | — |

| | | |
|---|---|---|
| Maryclaire Campbell | — | — |
| Taher A. Elgamal | — | — |
| Robert C. Hausmann | — | — |
| Maribess L. Miller | — | — |

39. In addition, certain employment agreements with certain Zix executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name (1) | Cash ($) (2) | Equity ($) (3) | Pension/ NQDC ($) (4) | Perquisites/ Benefits ($) (5) | Tax Reimbursement ($) (6) | Total ($) |
|---|---|---|---|---|---|---|
| David J. Wagner | 820,000 | 7,693,223 | n/a | 30,000 | n/a | 8,543,223 |
| Ryan L. Allphin | 502,515 | 2,737,599 | n/a | 30,000 | n/a | 3,270,114 |
| John P. Di Leo | 750,025 | 2,976,057 | n/a | 30,000 | n/a | 3,756,082 |
| David E. Rockvam | 603,737 | 4,268,649 | n/a | 30,000 | n/a | 4,902,386 |
| David J. Robertson | 431,983 | 1,945,650 | n/a | 30,000 | n/a | 2,407,633 |
| Noah F. Webster | 411,472 | 2,062,525 | n/a | 30,000 | n/a | 2,504,267 |

40. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41. Thus, while the Proposed Transaction is not in the best interests of Zix, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

42. On November 23, 2021, the Zix Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or

provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43. Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

a. The specific reasoning as to why the Board failed to create an committee composed of independent and disinterested Board members to run the sales process;

b. Adequate reasoning as to why no "majority-of-the-minority" voting provision was included in the offer given that at least 32% of the outstanding voting stock has been committed to tender in favor of the Proposed Transaction through True Wind;

c. Whether the terms of any confidentiality agreements entered during the sales process between Zix on the one hand, and any other third party (including OpenText), if any, on the other hand, differed from one another, and if so, in what way;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including OpenText) throughout the sales process, if any, would fall away; and

e. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

*Omissions and/or Material Misrepresentations Concerning Zix's Financial Projections*

44. The Recommendation Statement fails to provide material information concerning financial projections for Zix provided by Zix management and relied upon by Citi in its analyses. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

45. The Recommendation Statement should have, but fails to provide, certain information in the projections that Zix management provided to the Board, and Citi. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

46. With regard both the projections for Zix, the Recommendation Statement fails to disclose material line items for the following metrics:

a. Adjusted Gross Profit, including all underlying necessary inputs and assumptions, including specifically: gross profit, stock-based compensation

expense, restructuring costs, and the specific other significant items of a non-recurring and/or non-operational nature considered;

b. Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: earnings, interest expense, income taxes, depreciation and amortization, stock-based compensation expense, restructuring costs, and the specific other significant items of a non-recurring and/or non-operational nature considered;

c. Capital Expenditures, including all underlying necessary inputs and assumptions, including specifically: capitalized costs related to the development of internal-use software; and

d. Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: cash flow from operations prior to after-tax interest expense, and the specific adjustments made for the treatment of stock-based cash compensation as a cash expense.

47. The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Citi's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

50. In the Recommendation Statement, Citi describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

a. The specific bases for treating stock-based compensation as a cash expense in the analysis;

b. The specific terminal values for Zix calculated;

c. The specific inputs and assumptions used to determine the utilized terminal value reference range of Adjusted EBITDA less capital expenditures multiples of 15.9x to 19.9x;

d. The specific inputs and assumptions used to determine the utilized discount rate range of 11.0% to 13.2%;

e. Zix's weighted average cost of capital utilized;

f. Zix's implied equity value calculated;

g. Zix's net operating losses utilized;

h. Zix's net debt as of September 30, 2021;

i. The number of outstanding shares outstanding of Zix on a fully diluted basis utilized; and

j. The specific inputs and assumptions used to determine the utilized midpoint discount rate of 12.1%;

52. With respect to the *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose the following:

a. The specific metrics for each selected company analyzed; and

b. The specific inputs and assumptions used to determine the utilized illustrative ranges of multiples of firm value to Adjusted EBITDA less capital expenditures of 15.9x to 19.9x.

53. With respect to the *Sum of the Parts Analysis*, the Recommendation Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine the utilized range of firm value to revenue multiples of 3.7x to 5.1x as applied to Zix's forecasted 2022 revenue for the IP business; and

b. The specific inputs and assumptions used to determine the utilized range of firm value to gross profit multiples of 3.3x to 5.0x as applied to Zix's forecasted 2022 gross profit for the MSFT Business.

54. With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

a. The metrics for each selected precedent transaction;

b. The date on which each selected precedent transaction closed;

c. The aggregate value of each selected precedent transaction; and

d. The specific inputs and assumptions used to determine the utilized illustrative ranges of multiples of firm value to NTM Adjusted EBITDA less capital expenditures of 15.6x to 21.1x.

55. With respect to the *Discounted Analyst Price Targets* Analysis, the Recommendation Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine the utilized discount rate of 12.5%.

56. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

57. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Zix stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement

**FIRST COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

60. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

61. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

64. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

65. Plaintiff has no adequate remedy at law.

**SECOND COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**(Against all Individual Defendants)**

66. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

67. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

68. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

69. SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

70. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts,

including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

71. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

72. Plaintiff has no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

73. Plaintiff repeats all previous allegations as if set forth in full herein.

74. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Zix's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

77. The Individual Defendants acted as controlling persons of Zix within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Zix to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Zix and all of its employees. As alleged above, Zix is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 30, 2021

**BRODSKY & SMITH**

By: ______________________

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*